IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CORNELIA BENSON and JUDY KIEFFER, )<br>on behalf of themselves and all others )<br>similarly situated, )<br>    )<br>    Plaintiffs, )<br>    )<br>v.    )<br>    )<br>ASURION CORPORATION and )<br>ASURION INSURANCE SERVICES, INC., )<br>    )<br>    Defendants. ) | Case No. 3:10-cv-526<br>Judge Trauger |

## MEMORANDUM

Pending before the court is the Motion for Conditional Certification of a Collective Action filed by the plaintiffs (Docket No. 37), to which the defendants have filed a response (Docket No. 46), and in support of which the plaintiffs have filed a reply (Docket No. 51). For the reasons discussed below, the plaintiffs' motion will be granted.

## BACKGROUND

The two named plaintiffs, Cornelia Benson and Judy Kieffer, are employees of defendants Asurion Corp. and Asurion Insurance Services, Inc. (collectively, "Asurion").[1] Asurion provides technology protection services, including administration of cellular phone insurance and warranty plans. Benson and Kieffer work as customer service representatives ("CSRs") and spend most of their workday fielding calls from customers seeking to file

---

[1] Unless otherwise noted, the facts are drawn from the parties' filings and related exhibits.

1

insurance claims.

Asurion operates two call centers in Nashville, one on Linbar Drive, the other on Grassmere Park. In addition to CSRs, several other types of hourly employees work at the two facilities, including: technical support representatives ("TSRs"), who receive calls from customers who have technical problems with their replacement phones; problem resource center specialists ("PRCs"), who are the first point of escalation for callers who have complex technical problems; verification service representatives ("VSRs"), who verify whether customers filing claims are, in fact, enrolled for insurance; and advanced customer care representatives ("ACC reps"), who receive escalated customer calls from CSRs.[2] According to the defendant, there are currently approximately 226 CSRs, and they are supervised by 17 supervisors. Approximately ten additional supervisors oversee TSRs, PRCs, and VSRs at the two call centers.

Hourly employees at Asurion's call centers clock in and out via their workstation telephones. The plaintiffs allege that, before clocking in, employees are required to spend a certain amount of uncompensated time booting up their computers and performing other preparatory work and that, after clocking out, employees spend uncompensated time logging off their computers. The plaintiffs claim that, by failing to pay overtime for these pre- and post-shift tasks, Asurion has violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. The

---

[2] The named plaintiffs, as well as all other CSRs, work at the Grassmere location. Until October 2010, TSRs worked at Linbar, but they now work at Grassmere. All PRCs work at Linbar.

The defendants claim that all ACC reps currently work in Asurion facilities in Texas or Canada. But the plaintiffs have submitted the declaration of a former Asurion employee who worked as an ACC rep in Nashville from July 2007 to October 2009, so it appears that ACC reps did work in Nashville for at least part of the relevant time period.

plaintiffs filed their Complaint on May 28, 2010, and they seek to represent a class of all employees who have performed uncompensated work at Asurion's Nashville call centers since May 28, 2007.

In February 2009, Asurion settled a suit, *Shabazz v. Asurion Insurance Service*, Case No. 3:07-0653 (M.D. Tenn.), containing nearly identical allegations. Judge Echols conditionally certified a collective action, *see Shabazz v. Asurion Ins. Serv.*, No. 3:07-0653, 2008 U.S. Dist. LEXIS 29696 (M.D. Tenn. April 10, 2008), after which the parties settled. The instant named plaintiffs did not opt into the *Shabazz* litigation. Asurion contends that, beginning in approximately October 2007, in response to the *Shabazz* suit, it instituted policies to ensure that employees clock in before booting up their computers. Asurion claims that employees have received training on these procedures.

## ANALYSIS

The plaintiffs have filed a Motion for Conditional Certification of a Collective Action, pursuant to 29 U.S.C. § 216(b).

**I. FLSA Certification Standard**

The FLSA provides that a collective action "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Because the statute only requires that employees be "similarly situated," plaintiffs seeking to certify a collective action under the FLSA face a lower burden than those seeking to certify a class action under Federal Rule of Civil Procedure 23. *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 584 (6th Cir. Ohio 2009). Once a collective

action is certified, however, employees seeking to join the class must affirmatively opt into the litigation by filing a written consent with the court. 29 U.S.C. § 216(b).

The FLSA does not define the term "similarly situated." The Sixth Circuit has noted that courts have considered "the 'factual and employment settings of the individual[] plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, [and] the degree of fairness and procedural impact of certifying the action as a collective action.'" *O'Brien*, 575 F.3d at 584 (quoting 7B Wright, Miller, & Kane, *Federal Practice and Procedure* § 1807 at 497 n.65 (3d ed. 2005)) (alterations in original). "[I]t is clear that plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *Id.* at 585. But employees may also be similarly situated if their claims are merely "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.* Indeed, "[s]howing a 'unified policy' of violations is not required [for certification]." *Id.* at 584. In *O'Brien*, the Sixth Circuit stated that even a requirement that employees' "causes of action under the FLSA accrued at about the time and place in the approximate manner of the named plaintiff" would be "more demanding than what the [FLSA] requires." *Id.* at 585.

Typically, courts employ a two-phase inquiry to address whether the named plaintiffs are similarly situated to the employees they seek to represent. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006); *O'Brien*, 575 F.3d at 583. "The first [phase] takes place at the beginning of discovery. The second occurs after all of the opt-in forms have been received and

4

discovery has concluded." *Comer*, 454 F.3d at 546 (quotation marks omitted).

At the first stage, the plaintiff bears the burden of showing that employees in the class are similarly situated. *Shabazz*, 2008 U.S. Dist. LEXIS 29696, at *7. At that point, "'the certification is conditional and by no means final.' The plaintiff must show only that 'his position is similar, not identical, to the positions held by the putative class members.'" *Comer*, 454 F.3d at 546-47 (quoting *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 595 (S.D. Ohio 2002)). In *Comer*, the Sixth Circuit approvingly quoted the lower court's decision, which stated that conditional certification "'need only be based on a modest factual showing,'" *id.* at 547 (quoting *Pritchard*, 210 F.R.D. at 596), and that the court should use "'a fairly lenient standard [that] typically results in . . . certification,'" *id.* (quoting *Morisky v. Public Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497 (D.N.J. 2000)); *see also Shabazz*, 2008 U.S. Dist. LEXIS 29696, at *7 (stating that plaintiffs "must simply submit evidence establishing at least a colorable basis for their claim that a class of similarly situated plaintiffs exist[s]" (quotation marks omitted)). If the named plaintiffs show that employees in the proposed class are similarly situated, "[t]he district court may use its discretion to authorize notification of similarly situated employees to allow them to opt into the lawsuit." *Comer*, 454 F.3d at 546.

After discovery, the defendant may move for decertification of the conditional class. *See O'Brien*, 575 F.3d at 583; *Shabazz*, 2008 U.S. Dist. LEXIS 29696, at *8 (citing *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 952 (11th Cir. 2007)). At this second stage, the court has access to more information and employs a "stricter standard" in deciding whether class members are, in fact, similarly situated. *Comer*, 454 F.3d at 547.

5

## II. Whether Other Employees are Similarly Situated to the Named Plaintiffs

The parties dispute whether the plaintiffs have sufficiently shown that they are similarly situated to a class of other employees. In support of their motion, the plaintiffs have submitted declarations from themselves and nine other Asurion employees, each stating that they were required to perform uncompensated work. In response, Asurion argues that it has instituted a timekeeping policy that complies with the FLSA and that the plaintiffs cannot show a unified practice of disregarding the official policy.

The plaintiffs' supporting declarations provide evidence that Asurion employees are not compensated for all work performed. Each declaration contains the same basic factual allegations. For example, the declaration of plaintiff Benson, who has worked as a CSR at Asurion since 1999, states that she "[has] been instructed by [her] supervisors at Asurion to punch in and out at designated scheduled shift start and end times." (Docket No. 38, Ex. 1 ¶ 6.) However, she has also "been required and instructed by [her] managers and/or supervisors to be ready to take calls at [her] scheduled start time." (*Id.* ¶ 7.) Thus, before she clocks in, she is "required to start up various programs, log onto various systems, and perform other preparatory work." (*Id.*) The declaration lists a number of computer programs that she logs into, which process takes "between eight and ten minutes." (*Id.* ¶ 8.) Then, after clocking out at the end of her shift, Benson is "required to perform work related activities, including closing down and logging off [her] computer programs." (*Id.* ¶ 10.) This takes "several minutes." (*Id.*) Benson is not compensated for this pre- and post-shift activity. Benson's declaration further states that, throughout her employment at Asurion, she has "witnessed hundreds of other Asurion call center

6

employees working unpaid hours outside their scheduled shifts, as described above in this declaration." (*Id.* ¶ 11.)

Plaintiff Kieffer, who has worked as a CSR since 2001, makes nearly identical allegations in her declaration.[3] (*See* Docket No. 38, Ex. 2.) She, too, claims to have witnessed "hundreds" of other Asurion employees performing similar uncompensated work. (*Id.* ¶ 11.)

The plaintiffs also offer the declarations of nine other current and former Asurion employees. (*See* Docket No. 38, Ex. 3; Docket No. 50, Exs. 1-6; Docket No. 54, Exs 1-2.) Four of these employees are (or were) CSRs: (1) Ethel Dubois, who has worked as a CSR since May 2008; (2) Kentrail Wilson, who worked as a CSR from 2005 to August 2008; (3) Jimet Young, who worked as a CSR from March 2008 to July 2010; and (4) Orlando Davis, Jr., who worked as a CSR from 2003 to December 2007. The other five employees held different job titles for at least part of their employment. They are: (1) Cheria Jenkins, who worked as a TSR at the Linbar facility from 2005 to October 2008; (2) Latres Stewart, who worked a TSR at the Linbar facility from 2006 to July 2007 and as a VSR at the Grassmere facility from July 2007 to February 2008; (3) Keyona Newell, who worked as a CSR from March 2007 to July 2007 and as an ACC rep from July 2007 to October 2009; (4) Julien Putnam, who worked as a CSR from 2006 to early 2008 and has worked as a "senior claims representative" since early 2008; and (5) Tamika Johnson, who worked as a VSR from 2002 to 2008.

---

[3] Kieffer also claims that she has a medical condition that forces her to use the restroom more frequently than normal. She alleges that, formerly, she was required to clock out during her shift to use the restroom and that, currently, her restroom breaks negatively impact her performance evaluations. (Docket No. 38, Ex. 2 ¶ 12.)

7

These declarations contain the same basic allegations as the named plaintiffs' declarations. Each one states that the employee was required to clock in and out at the scheduled shift start and end times,[4] that the employee was required to be ready to take calls at the scheduled start time, and that time spent logging in and out of computer programs was uncompensated. Each declaration further states that the employee saw hundreds of other call center employees performing uncompensated pre- and post-shift work.[5]

The court finds that these declarations provide the "modest factual showing" required for conditional certification of the plaintiffs' proposed class. *See Comer*, 454 F.3d at 547. All together, the plaintiffs have provided 11 declarations of current and former employees, all of whom worked or were hired after Asurion implemented its new timekeeping policy in October 2007. These declarations show that, despite differences in job descriptions, each hourly call center employee used the same phone-based timekeeping system and performed similar tasks related to logging on and off of their computers. The declarations, which span all five hourly job titles and both Nashville call center facilities, support a finding that Asurion's supervisors effectively required at least some hourly employees to perform uncompensated pre- and post-shift tasks. Because the plaintiffs' evidence suggests the existence of a common practice that

---

[4] The exception is Kentrail Wilson, who does not explicitly state that he was *required* to clock in and out at scheduled start and end times. But his declaration states that he did, in fact, clock in at his scheduled start times. (See Docket No. 50, Ex. 5 ¶ 6.) Jimet Young also does not explicitly state that he was required to clock in at the scheduled shift start time, but he does state that "Asurion recommends that call center workers . . . come in to work fifteen minutes early." (Docket No. 50, Ex. 6 ¶ 6.)

[5] The two exceptions are Cheria Jenkins, who states that she saw "dozens" of other employees working unpaid time (Docket No. 50, Ex. 1 ¶ 8), and Tamika Johnson, who states that she saw "many" other employees working unpaid time (Docket No. 54, Ex. 2 ¶ 7).

violates the FLSA, the plaintiffs have met their "fairly lenient" burden. *See id.*

This is the same conclusion reached by the court in *Shabazz*. Faced with similar declarations from four Asurion employees, the court found:

> The Amended Complaint, coupled with the Declarations provide a "modest showing" that at least some call center employees who handled telephone calls from customers at Asurion's Nashville call centers may not have been paid for all time worked. Plaintiffs are entitled to look into the matter further, and to do so they need to provide notice of their claims to other Nashville call center employees.

*Shabazz*, 2008 U.S. Dist. LEXIS 29696, at *13 (citation omitted).

Asurion argues that the plaintiffs cannot show that they are similarly situated to other employees because they cannot show a company-wide policy or practice of forcing employees to perform uncompensated pre- and post-shift tasks.[6] (Docket No. 46 at 14-18.) It argues that the

---

[6] Citing *Pacheco v. Boar's Head Provisions Co.*, 671 F. Supp. 2d 957 (W.D. Mich 2009), the defendants argue that FLSA collective action plaintiffs must show that they and the "class members were together the victims of 'a single decision, policy, or plan' that violates the law." (Docket No. 46 at 10 (quoting *Pacheco*, 671 F. Supp. 2d at 961).) But *Pacheco* rejected the clear statement by the Sixth Circuit in *O'Brien* that "[s]howing a 'unified policy' of violations is not required" to support certification of a collective action. *See Pacheco*, 671 F. Supp. 2d at 961. Ignoring this statement as *dicta*, the *Pacheco* court looked instead to various district court decisions requiring a single, unified policy of violations. *Id.* This court will not so lightly disregard the clear statements in *O'Brien*. Nor will the court rely on out-of-circuit district court decisions requiring a "common unlawful policy." (*See* Docket No. 46 at 18 (citing, e.g., *Simmons v. T-Mobile USA, Inc.*, No. H-06-1820, 2007 U.S. Dist. LEXIS 5002 (S.D. Tex. Jan. 24, 2007); *Salinas v. O'Reilly Auto., Inc.*, NO. 3: 04-CV-1861-B, 2005 U.S. Dist. LEXIS 45736 (N.D. Tex. Nov. 17, 2005)).)

Here, the plaintiffs' declarations support a common theory of Asurion's FLSA violations – that the requirements (1) to clock in at the scheduled shift start time and (2) to be ready to take calls at the scheduled shift start time forced employees to spend time logging into their computers before clocking into their phones. Under *O'Brien*, this is sufficient to show that the employees are similarly situated. *See O'Brien*, 575 F.3d at 585 (finding that employees may be similarly situated if their claims are "unified by common theories of defendants' statutory

9

plaintiffs' claims "are highly individualized, hinging solely on their own subjective interpretations of alleged comments made by a handful of supervisors or other non-management personnel on unspecified dates." (Docket No. 46 at 12.)

Asurion has submitted evidence that, in October 2007, after the commencement of the *Shabazz* litigation, it adopted an official timekeeping policy that complied with the FLSA. Asurion claims that supervisors and hourly employees received training making it clear that employees were supposed to clock into the telephone system before logging onto their computers. (*See id.* at 2-5.) It points out that employees review the accuracy of their time records (*id.* at 5-6), that employees are allowed to clock in up to seven minutes before their scheduled shift start time (*id.* at 7), and that no employees have complained to management regarding uncompensated time (*id.* at 19-20).

Asurion has submitted declarations from four hourly employees and five supervisors, the main thrust of which is that employees are told to, and do, clock in before logging onto their computers and clock out after logging off. (*Id.*, Exs. 4-5.) Asurion has also deposed both named plaintiffs, and it points out that they seemed unsure of who instructed them to perform uncompensated work.[7] (*Id.* at 14-16.) For example, plaintiff Benson testified that "managers" never directly told her that she could not log into the phone before starting her shift. (*Id.*, Ex. 2 at 185.) But Benson did testify that she was verbally instructed during training sessions that she

violations").

[7] Although the defendants have deposed the plaintiffs, the plaintiffs have not yet taken any discovery from the defendants. (Docket No. 51 at 10 n.7.) The plaintiffs' motion was filed only four months after the filing of their Complaint.

10

was required to be ready to take calls at her scheduled shift start time. (*Id.* at 182-84.) Similarly, plaintiff Kieffer testified that she did not remember which specific training and management employees told her to log into her computer before clocking in. (*Id.*, Ex. 3 at 103-04, 148-49.) Nevertheless, she did testify that she was instructed to log into her computer first. (*Id.*)

Although the evidence submitted by the defendants tends to contradict the plaintiffs' evidence and to reveal potential weaknesses in their case, it does not preclude conditional certification. As explained above, the plaintiffs' evidence suggests, at a minimum, that some hourly employees have performed uncompensated pre- and post-shift tasks. "Where, as here, plaintiffs have adduced sufficient evidence to meet step one's 'extremely lenient standard' for conditional certification, evidence offered by the defendant purporting to show plaintiffs are not similarly situated to absent class members, while significant after discovery and during the step-two analysis, does not compel denial of conditional certification."[8] *Gallagher v. Lackawanna County*, No. 3:CV-07-0912, 2008 U.S. Dist. LEXIS 43722, at *27-28 (M.D. Pa. May 30, 2008); *see also Burch v. Qwest Commc'ns Int'l, Inc.*, 500 F. Supp. 2d 1181, 1186 (D. Minn. 2007) (stating that, at the first stage of collective action certification, "[t]he court does not make any credibility determinations or findings of fact with respect to contrary evidence presented by the parties").

Furthermore, the defendants cannot defeat certification by arguing that the plaintiffs'

---

[8] The defendants decry the litigation costs that conditional certification will impose on them, given the supposed lack of merit of the plaintiffs' claims. (Docket No. 46 at 24-25.) But their true quarrel is with the lenient standard for certification, *see Comer*, 454 F.3d at 547, which this court is not free to revisit.

claims might rely on individualized evidence. *O'Brien*, 575 F.3d at 585 ("[T]he plaintiffs were similarly situated, because their claims were unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct."); *see also Noble v. Serco, Inc.*, No. 3: 08-76-DCR, 2009 U.S. Dist. LEXIS 89709, at *10-11 (E.D. Ky. Sept. 28, 2009) ("When a plaintiff has made the minimal showing required at the notice stage, the defendant cannot overcome [the] [p]laintiff's showing by arguing that individual issues may dominate; rather, that issue must be raised in a motion to decertify at the second stage of the certification process." (quotation marks omitted) (alterations in original)). As the court in *Shabazz* stated, Asurion's "arguments are more appropriately raised at the second stage, or decertification stage, of a collective action." *Shabazz*, 2008 U.S. Dist. LEXIS 29696, *8.

Accordingly, the court will conditionally certify a collective action for a class consisting of "[a]ll individuals who performed uncompensated work since May 28, 2007 at Asurion's call centers in Nashville, Tennessee." (Docket No. 1 ¶ 13.)

To facilitate class notice, the court will order the defendants to provide the plaintiffs with the names and last known addresses of such employees who did not opt into the *Shabazz* class. *See Shabazz*, 2008 U.S. Dist. LEXIS 29696, at *16. The plaintiffs have submitted a proposed notice form, based on the form used in the *Shabazz* litigation, addressed to "[a]ll current and former employees of Asurion Insurance Services, Inc. who worked as customer service representatives, verification representatives, technical support representatives, advanced customer care representatives, enrollment representatives and problem resolution center representatives at the Nashville, Tennessee locations on or after May 28, 2007." (Docket No. 37,

12

Ex. 1.) They have also submitted a proposed opt-in consent form. (*Id.*, Ex. 2.) The defendants' brief does not address the proposed forms. Thus, the court will order the parties to confer and to submit agreed notice and consent forms by December 13, 2010. If they cannot agree, the defendants may file their objections to the plaintiffs' proposed forms by the same deadline.

## **CONCLUSION**

For all of the reasons discussed above, the court will grant the plaintiffs' Motion for Conditional Certification.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge